IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **CASCADE CAPITAL GROUP, LLC** | **PLAINTIFF** |
| v. | CAUSE NO. 3:17cv952-LG-FKB |
| **LIVINGSTON HOLDINGS, LLC;** **CHESTNUT DEVELOPERS, LLC;** **DAVID LANDRUM; and MICHAEL L.** **SHARPE** | **DEFENDANTS** |
| **AND** | |
| **LIVINGSTON HOLDINGS, LLC;** **CHESTNUT DEVELOPERS, LLC; and** **MICHAEL L. SHARPE** | **COUNTERCLAIMANTS** |
| v. | |
| **CASCADE CAPITAL GROUP, LLC** | **COUNTERDEFENDANT** |
| **AND** | |
| **LIVINGSTON HOLDINGS, LLC;** **CHESTNUT DEVELOPERS, LLC; and** **MICHAEL L. SHARPE** | **THIRD PARTY PLAINTIFFS** |
| v. | |
| **MARK CALVERT** | **THIRD PARTY DEFENDANT** |

<u>**ORDER GRANTING IN PART MOTION FOR ATTORNEY FEES AND COSTS OF COLLECTION**</u>

BEFORE THE COURT is [153] Motion for Attorney Fees and Costs of Collection filed by Plaintiff Cascade Capital Group, LLC ("Cascade"). Defendant David Landrum filed a response in opposition and, after the Court ordered additional briefing, Cascade and Landrum each filed supplemental briefs. Having

considered the submissions of the parties, the record, and applicable law, the Court concludes that Cascade's Motion for Attorney Fees and Costs of Collection should be granted in part. Cascade will be awarded $116,576.50 in fees and $4096.43 in costs from Landrum.

## I. BACKGROUND

This case stems from disputes among various partners[1] in a real estate project that is redeveloping the "old Town of Livingston" in Madison County, Mississippi. On February 4, 2019, the Court found Defendants Livingston Holdings, LLC ("Livingston"), Chestnut Developers, LLC ("Chestnut"), Michael L. Sharpe, and David Landrum to be in default of a Promissory Note ("the Note") and a subsequent Forbearance Agreement ("the Agreement"), as modified by the First Amendment to the Forbearance Agreement. (*See* Mem. Op. & Order Granting in Part & Den. in Part Mot. Summ. J., ECF No. 111; Order Granting Mot. J. on Pleadings, ECF No. 112.) Livingston, Chestnut, and Sharpe filed counterclaims for breach of fiduciary duty against Cascade, which proceeded to trial on September 23, 2019.

Following a three-day bench trial and consideration of posttrial briefing, the Court found that Cascade had breached its fiduciary duty of loyalty to Livingston, Chestnut, and Sharpe. (*See* Findings of Fact & Conclusions of Law, ECF No. 151.) The Court entered a [150] Rule 54(b) Judgment against Landrum, in favor of Cascade, and a [152] Final Judgment concerning the rights and obligations as

---

[1] The Court uses this term in the colloquial sense only. There is no finding that any parties to this case are legally partners.

between Livingston, Chestnut, Sharpe, and Cascade.  The 54(b) Judgment against Landrum awarded Cascade "compensatory damages in the amount of $1,030,370.00; accrued interest at a rate of 12% per annum from April 1, 2016 through May 30, 2016, and, commencing June 1, 2016, accrued interest at a rate of 18% per annum; costs; and attorney's fees."  (Rule 54(b) J. in Favor of Cascade 2, ECF No. 150.)  The Final Judgment awarded Cascade

> compensatory damages from Defendants [Livingston, Chestnut, and Sharpe], jointly and severally with all parties to the Promissory Note (Ex. D-3) and the Forbearance Agreement (Ex. D-4) as amended by the First Amendment to the Forbearance Agreement, in the amount of $424,329.55 with interests from the date of judgment at the rate of 6.5% as provided by the Findings of Fact and Conclusions of Law.

(Final J. 2, ECF No. 152.)  Further, the Final Judgment ordered that the Deed of Trust for the 22 acres of land encumbered by the Note and Agreement secures only the $424,329.55 owed by Livingston, Chestnut, and Sharpe.  (*Id.*)  Cascade was not awarded attorney's fees and costs against Livingston, Chestnut, and Sharpe.

Cascade now seeks attorney's fees and costs from Landrum pursuant to the provisions of the Note and Agreement and the Rule 54(b) Judgment.  Paragraph 10 of the Note states, "In the event litigation is commenced to enforce or interpret this Promissory Note or any provision herein, or to collect any amounts due hereunder, the prevailing party shall be entitled to receive . . . its reasonable attorneys' fees and legal costs."  (Trial Ex. D-3.)  The Agreement similarly provides that "Borrowers shall reimburse Lender for all expenses incurred by Lender, at any time on, before or after the date hereof in connection with . . . any matters contemplated

by or arising out of this Agreement or the Loan Documents including . . . any action taken . . . to commence, prosecute, defend or intervene in any litigation . . . ." (Trial Ex. D-4.)  In his [17] Answer to Cascade's Amended Complaint, Landrum admitted all the allegations against him (hence the entry of judgment on the pleadings). Paragraph 14 of the Amended Complaint says that "Cascade is entitled to collect all expenses, including, but not limited to, all legal fees and expenses incurred in the collection of the indebtedness."  (Am. Compl. 5, ECF No. 6.)

Notwithstanding his confession, Landrum contends that he should not be held liable for Cascade's attorney's fees.  He argues that the plain language of the Final Judgment, "as well as principles of law and equity," preclude holding Landrum liable for a larger sum of money than the other three defendants. (Landrum Supplemental Brief 6, ECF No. 167.)  Alternatively, he maintains that any award of reasonable fees should only account for efforts to collect against him; he admitted all allegations against him and did not pursue a counterclaim.

## II. DISCUSSION

a. <u>Legal Standard</u>

The "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370 (2019) (citations and internal quotation marks omitted).  Here, there are contracts providing for the award of attorney's

fees, so the judgment entered against Landrum and in favor of Cascade accordingly affords attorney's fees.

"The determination of a fees award is a two-step process." *Jimenez v. Wood Cty.,* 621 F.3d 372, 379 (5th Cir. 2010), *on reh'g en banc,* 660 F.3d 841 (5th Cir. 2011). "First the court calculates the 'lodestar[,]' which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* at 379.

The burden of proving the reasonableness of the hours expended is on the fee applicant. *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.,* 261 F.3d 512, 528 (5th Cir. 2001). In determining the number of hours billed, "courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (quoting *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). A district court may reduce the number of hours awarded if the documentation is vague or incomplete, *id.*, and "should exclude all time that is excessive, duplicative, or inadequately documented." *Jimenez*, 621 F.3d at 379-80.

In determining the hourly rates for purposes of calculating the lodestar, the Court must determine a reasonable rate for each attorney at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The applicant bears the burden of producing satisfactory evidence that the

requested rate is aligned with prevailing market rates. *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cty., Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985).

Proceeding to the second step, the court can adjust the calculated lodestar amount based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[2]:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to the acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved, and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson,* 488 F.2d at 717-19).

"The lodestar method yields a fee that is presumptively sufficient to achieve this objective," however, and this presumption "is a 'strong' one." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensely,* 461 U.S. at 434 n.9. So "[t]he lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already

---

[2] 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989).

took that factor into account; to do so would be impermissible double counting." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

b. <u>Analysis</u>

Cascade contends that its attorneys' bill for $337,450.50 in fees and $6,873.27 ($344,323.77 in total) is reasonable and compensable. As an initial matter, the Court finds reasonable the $275 hourly rate billed each by attorneys Patrick F. McAllister, Reeve G. Jacobus, Jr., Shelly Gunn Burns, and Tiffany Piazza Grove. Mr. McAllister and Mr. Jacobus both have over thirty years of experience in commercial litigation, Ms. Burns has over twenty years of experience in commercial litigation, and Ms. Grove had over thirteen years of experience in commercial litigation.[3] *See U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06-cv-433-HSO-RHW, 2014 WL 691500, at *15 (S.D. Miss. Feb. 21, 2014) (finding that $358 per hour was a reasonable rate in a complex case for a partner with fifteen years of experience); *id.* at *15 (finding that $262 per hour was reasonable in a complex case for an associate with ten years of experience). The Court also finds reasonable the $125 and $115 per hour rates charged for paralegals Ashley Brown and Servando Rives. *See id.* at *17-18 (finding that $124 per hour is a reasonable rate for a paralegal).

Turning to the hours billed, Landrum does not contest any of the billing entries despite having now been given multiple opportunities to do so. Instead, Landrum loosely asserts that "many time entries contributing to Cascade's amount

---

[3] Ms. Grove withdrew from the case in December 2018 and was later replaced by Ms. Burns.

of fees incurred were either 1) unrelated to the claims asserted in this litigation; 2) not generally recoverable under the law; and 3) not related to any claims against David Landrum." (Landrum Supplemental Brief 9, ECF No. 167.) But he provides no specifics as to any of these contentions, despite acknowledging that 79 pages of billing records were already before him for review. Landrum apparently takes the position that he is entitled to a hearing at which he can contest these billing entries. There is no need for an additional in person hearing. The response in opposition to the original motion and supporting documentation, the supplemental briefs and arguments of counsel, provided both sides ample opportunities to point out the correctness or incorrectness of Cascade's calculations and Landrum's responsibility for all or part of the fees and costs request.

The Court has reviewed Cascade's billing records and finds no clearly excessive, duplicative, or inadequately documented entries. Indeed, where multiple attorneys conferenced, only one billed for time. Entries are adequately detailed and demonstrate compensable time spent representing Cascade in this matter. Accordingly, the lodestar is the same $337,450.50 for fees submitted by Cascade.

The question remains whether this sum should be adjusted, at least insofar as Landrum's responsibility is concerned. Landrum's first argument – that he should not be responsible for any of the fees because the Final Judgment does not hold Livingston, Chestnut, and Sharpe liable for fees is unpersuasive. Landrum does not believe (or at least did not claim) that Cascade breached a fiduciary duty owed to him. Therefore, there was no claim for which Landrum could have been

entitled to relief. He admitted each allegation against him, including his contractual obligation to pay reasonable attorney's fees. Nothing precluded the Court from equitably modifying the contractual liability of Livingston, Chestnut, and Sharpe while leaving intact Landrum's confessed liability in full.[4]

Landrum's second argument – that he should not be held responsible for fees incurred beyond obtaining judgment against him – does merits further consideration. In the Order requiring supplemental briefing on the instant Motion, the Court noted that neither Cascade nor Landrum had differentiated between costs and fees incurred in prosecuting the claims against Landrum and those costs and fees attributable to litigating against Livingston, Chestnut, and Sharpe. (*See* Order 2, ECF No. 166.) The Court accordingly ordered that supplemental briefs "must identify those costs and fees attributable only to collecting from Landrum." (*Id.*) Neither party has done so.[5]

District courts have wide discretion on when and how to apportion attorney's fees. *Council for Periodical Distribs. Ass'ns v. Evans*, 827 F.2d 1483, 1487 (11th Cir. 1987). In some cases, it may even be necessary to exclude certain otherwise compensable fees, such as where fees are expended in unsuccessfully prosecuting or

---

[4] Landrum does not identify any caselaw in support of his contentions. His reference to basic rules of joint and several liability have no bearing where the Court has equitably modified contractual obligations. The Final Judgment makes clear that Livingston, Chestnut, and Sharpe's full liability is joint and several with Landrum, but Landrum's full liability is not joint and several with the other defendants.

[5] Cascade's reluctance to provide the Court with such a calculation is understandable given its position that no such distinction is appropriate. But Landrum's failure to offer a calculation of hours attributable to litigating against him is not easily understood.

defending a claim. *See Dow Chem. Co. v. M/V Roberta Tabor*, 815 F.2d 1037, 1045-46 (5th Cir. 1987); *Robinson v. Kimbrough*, 652 F.2d 458, 466-67 (5th Cir. 1981). "A district court in a multi-defendant case must choose among a variety of modalities [for fee apportionment]. These modalities include equal division among the defendants, division by relative liability, and division by assignment of the time reasonably expended in litigating against each defendant." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 337 (1st Cir. 2008). "The guiding principle is equity; the district court should strive to determine 'the most fair and sensible solution' for apportioning the fee award." *Id.* (citation omitted).

The most fair and sensible solution in this case seems to be a division of fees by the time reasonably spent litigating against each defendant. Under the circumstances, reasonable fees cannot include fees incurred for litigating claims against other parties. Landrum could not have made the claims against him any easier for Cascade to prove. On the other hand, Cascade's attorneys expended considerable time litigating against Livingston, Chestnut, and Sharpe, but obtained far less success against these other defendants than against Landrum.

Without any guidance from the parties as to what specific fees are or are not fairly attributable to litigating against Landrum, the Court is left to establish boundaries. Landrum has not finely combed through and investigated the billing records, and the Court declines to do so on his behalf. Instead, the Court will apply a closing bright line. This line most sensibly appears to be Cascade's October 12, 2018 filing of the [76] Motion for Judgment on the Pleadings as to David Landrum.

The only subsequent fees clearly attributable to Landrum are related to his own [145] Motion for New Trial filed November 12, 2019.  Accordingly, Cascade is entitled to award of fees and costs incurred through October 12, 2018 and as a result of Landrum's [145] Motion for New Trial filed November 12, 2019.  The professional fees Cascade incurred through October 12, 2018 total $114,404.00.  The professional fees Cascade incurred as a result of Landrum's Motion for New Trial total $2172.50.  Together, those fees amount to $116,576.50.  Costs through October 12, 2018 total $4096.43.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [153] Motion for Attorney Fees and Costs of Collection filed by Plaintiff Cascade Capital Group, LLC is **GRANTED IN PART**.  Cascade Capital Group, LLC is awarded $116,576.50 in fees and $4096.43 in costs from Defendant David Landrum.

**SO ORDERED AND ADJUDGED** this the 21st day of May, 2020.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE